IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ANTHONY DURBIN, CHRISTINA DURBIN,
DAVID TIMMS, BEVERLY TIMMS,
DEBBIE HARRIS, JOE HUDSON, and JANICE VANN        PLAINTIFFS

v.                    Case No. 3:14-cv-00052-KGB

CITY OF WEST MEMPHIS, ARKANSAS,
JOHN RIMMER, In his official capacity as general
manager of the West Memphis Utility Commission,
DANA PARKER, In his official capacity as the
chairman of the West Memphis Utility Commission,
WILLIE BRUCE, LOUTELIOUS HOLMES,
JOHN ROSS, SUSAN MARSHALL, BILL BECK, and
CARL HOLDEN in their official capacity as
Commissioners on the West Memphis Utility Commission        DEFENDANTS

## ORDER

Plaintiffs allege violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article 2, section 8 of the Arkansas Constitution. Before the Court is the motion to dismiss filed by separate defendants the City of West Memphis, Arkansas (the "City"), and John Rimmer, in his official capacity as the general manager of the West Memphis Utility Commission (Dkt. No. 4). Plaintiffs have responded (Dkt. No. 8), and the City and Mr. Rimmer have replied (Dkt. No. 10). For the reasons that follow, the Court denies the City and Mr. Rimmer's motion to dismiss (Dkt. No. 4).

   I.    Background

According to plaintiffs' complaint, plaintiffs are tenants of River Town Enterprises, Inc. ("River Town") and live at the Midway Trailer Park ("Midway") in West Memphis, Arkansas. Plaintiffs state that River Town owns and operates Midway and that each plaintiff lives at Midway pursuant to a lease agreement with River Town. Plaintiffs state that the West Memphis

Utility Commission (the "Commission") is an entity of the City established under Arkansas Code Annotated § 14-201-105 *et seq*.

Plaintiffs allege that defendants have contracted with River Town to provide electricity to Midway. Plaintiffs further allege that, under the lease agreements between plaintiffs and River Town, River Town is responsible for paying all utility bills associated with the operation of Midway. Plaintiffs allege that each plaintiff is current on his, her, or their rent payments under his, her, or their respective lease agreement with River Town. Plaintiffs claim that River Town's account with defendants has become delinquent as a result of River Town's failure over the last several months to make timely payments under its contract with defendants. Plaintiffs state that they were unaware of River Town's failure to make payments to defendants.

Plaintiffs claim that defendants terminated the utility services provided to River Town, leaving over 20 residences at Midway, including the homes of all named plaintiffs, without electricity. Plaintiffs allege that the termination of utility services occurred abruptly and without notice to any plaintiff. Plaintiffs state that they have been informed that defendants will not restore utility services to Midway until after River Town's debt is paid in full. Plaintiffs state that, as a result of the termination of utility services, they are unable to heat their residences, keep and cook food, and are subject to unsafe and unsanitary conditions.

Plaintiffs claim that defendants violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution by terminating plaintiffs' utility services without notice or an opportunity to contest the termination. Plaintiffs assert an analogous violation of article 2, section 8 of the Arkansas Constitution. Plaintiffs bring their federal claim under 42 U.S.C. § 1983 and their state claim under Ark. Code Ann. § 16-123-105. The City and Mr. Rimmer move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and

argue that plaintiffs lack standing and fail to set forth in their complaint a legitimate claim of entitlement to utility services that would support a due process claim.

## II. Standing

Although the City and Mr. Rimmer move to dismiss pursuant to Rule 12(b)(6), the Court construes their argument on the basis of standing as a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). "It is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). "We have stated numerous times that "standing is a 'threshold inquiry' that 'eschews evaluation on the merits.'" *Id.* (quoting *McCarney v. Ford Motor Co.*, 657 F.2d 230, 233 (8th Cir .1981)) (internal quotation marks omitted).

In deciding a Rule 12(b)(1) motion, the Court must first decide if the City and Mr. Rimmer are making a facial or factual challenge to plaintiffs' complaint. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). A facial attack addresses a deficiency in the pleadings, and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* The Court must accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir .2007). In a factual attack, the Court is presented with matters outside the pleadings and the non-moving party does not have the benefit of having all his allegations assumed as true. *Osborn*, 918 F.2d at 279 n.6. Here, the City and Mr. Rimmer raise a facial attack, arguing that plaintiffs "make no allegation of being utility customers of the City of West Memphis" (Dkt. No. 5, at 3).

Standing consists of three elements: (1) injury, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Stalley*, 509 F.3d at 521. However, in cases where the plaintiffs assert a procedural injury, they "can assert that right without meeting all the normal standards for redressability and immediacy," *Lujan*, 504 U.S. at 572 n.7, "so long as the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing." *Id.* at 573 n.8; *see Mineta*, 495 F.3d at 569-70.

As stated above, the City and Mr. Rimmer argue that plaintiffs lack standing because they do not allege that they are utility customers of the City. The Court is not persuaded by this argument. Plaintiffs claim that due process required defendants to provide them notice of the termination of their utility services; plaintiffs' allegation is not premised on their being the actual utility customers. This may prove significant to their claim on the merits. However, for purposes of standing, the Court finds that the process that plaintiffs claim they were denied, notice and a hearing, is designed to protect a concrete interest in utility services. Based on this, the Court finds plaintiffs' allegations sufficient to establish standing. The Court denies the City and Mr. Rimmer's motion to dismiss for lack of standing.

### III.   Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must satisfy the pleading requirement of Rule 8(a)(2), which requires "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007)) (internal quotation marks omitted).  However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'"  *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs assert a violation of their procedural due process rights under the Fourteenth Amendment, claiming that defendants terminated plaintiffs' utility services without prior notice or an opportunity to contest the termination (Dkt. No. 2, ¶¶ 17-19).  The City and Mr. Rimmer move to dismiss arguing that plaintiffs' complaint fails to set forth any Arkansas law granting them a legitimate claim of entitlement to utility services.

A due process claim "is cognizable only if there is a recognized liberty or property interest at stake."  *Johnson v. City of Minneapolis*, 152 F.3d 859, 861 (8th Cir. 1998).  To have a constitutionally cognizable property interest in a right or a benefit, a person must have "a legitimate claim of entitlement to it," as opposed to a "unilateral expectation" or an "abstract need or desire for it."  *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972).  "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."  *Memphis Light, Gas & Water Div.*

*v. Craft*, 436 U.S. 1, 9 (1978) (quoting *Roth*, 408 U.S. at 577). "Resolution of the federal issue begins, however, with a determination of what it is that state law provides." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

In their complaint and in their response to the City and Mr. Rimmer's motion to dismiss, plaintiffs claim that they have a constitutionally protected property interest in the utility services defendants provided to them based on the Supreme Court's holding in *Craft*, 436 U.S. 1. In *Craft,* the Court considered utility customers' procedural due process claim against the City of Memphis for terminating the customers' service. The Court found a legitimate claim of entitlement under the Due Process Clause because "[i]n defining a public utility's privilege to terminate for nonpayment of proper charges, Tennessee decisional law draws a line between utility bills that are the subject of a bona fide dispute and those that are not." *Id.* at 9. Reviewing Tennessee case law, the Court explained that state law did not permit a public utility to terminate services "at will." *Id.* at 11. Rather, the Court found that public utilities in Tennessee are obligated to provide service to "all of the inhabitants of the city of its location alike, without discrimination, and without denial, except for good and sufficient cause," and may not terminate service "except for nonpayment of a just service bill." *Id.* (citations omitted). The Court further noted that, under Tennessee law, "[a]n aggrieved customer may be able to enjoin a wrongful threat to terminate, or to bring a subsequent action for damages or a refund" and stated that "[t]he availability of such local-law remedies is evidence of the State's recognition of a protected interest." *Id.* (citations omitted). The Court concluded that, "[b]ecause petitioners may terminate service only 'for cause,' respondents assert a 'legitimate claim of entitlement' within the protection of the Due Process Clause." *Id.* at 11-12 (footnote omitted).

6

The City and Mr. Rimmer contend that plaintiffs' reliance on *Craft* is misplaced because its holding is limited to customers of the utility who have a property interest established by state law. *See, e.g.*, *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 763 (6th Cir. 2005) (stating that *Craft* is limited to Tennessee law). This Court agrees that, to show a statutory entitlement to continued utility services under the Supreme Court's reasoning in *Craft*, plaintiffs must point to some comparable Arkansas law. As stated by one district court, the decisions of different courts considering the issue reflect "a consensus that in order to establish a protected statutory interest in water service, a tenant must establish a statutory intent to provide water service to all users regardless of their status as property owners or tenants which is, in turn, protected by procedural mechanisms intended to prevent an erroneous deprivation of that interest for reasons other than unexcused nonpayment." *Brown v. City of Barre*, 878 F. Supp. 2d 469, 489 (D. Vt. 2012).

Plaintiffs cite no Arkansas statutory or decisional law similar to the Tennessee law at issue in *Craft*, and the Court is aware of none. Rather, plaintiffs, in their briefing, cite an Arkansas statute that requires 15-days written notice before a public water system terminates water service to a delinquent water user, Arkansas Code Annotated § 14-234-605. As an initial matter, the Court questions whether § 14-234-605 applies as plaintiffs' allegations appear to concern electrical services, not water service addressed in the statute. Even if plaintiffs' complaint refers to electrical and water services, § 14-234-605 still is inapplicable on these facts because the statute applies to a public water system "that is not otherwise regulated by a municipality or municipal water district." *Id.* By plaintiffs' own allegations, this action involves a municipal public utility. For these reasons, the Court need not consider whether § 14-234-605 would, if applicable, create a property interest in continued water service.

The Court notes the existence of certain rules and regulations regarding utility suspension promulgated by the Arkansas Public Service Commission. *See, e.g.*, 126-03-002 Ark. Code R. § 6. However, municipalities owning or operating public utilities are exempt from any supervision or regulation by the Arkansas Public Service Commission. Ark. Code Ann. § 14-200-112. Accordingly, the Arkansas Public Service Commission's rules do not appear to apply here.

In sum, plaintiffs have failed to cite any Arkansas statute or regulation that establishes a property right in continued utility service. Plaintiffs make no attempt to argue that any municipal ordinance or rule created by the City's municipal commission establishes such a property right.

The City's municipal code provides in part in regard to water service termination, "If any bill is not paid within thirty days, the city may discontinue service to such customer. In the event of such discontinuance of service, the customer shall be required to pay a reconnection charge in addition to all accrued charges for water service before any reconnection is made and service resumed." West Memphis, Ark., Code § 14.08.010(C). As to electrical service, the City's municipal code provides in part, "If a bill is not paid within thirty days from the date thereof, the city shall have the right to disconnect the customer's service without further notice. If a customer's service is disconnected for nonpayment, the city may make a reasonable charge for the labor of the reconnection." *Id.*, § 14.10.080. Unlike the law in *Craft*, these provisions do not draw a distinction between utility bills that are the subject of a bona fide dispute and those that are not, do not mandate that the City provide services without denial except for "good and sufficient cause," and do not establish legal remedies for a wrongful threat to terminate services. 436 U.S. at 11. Stated another way, these ordinances do not establish an intent to provide utility services to all users which in turn is protected by procedural mechanisms intended to prevent an erroneous deprivation of services for reasons other than unexcused nonpayment for the services.

Case 3:14-cv-00052-KGB Document 11 Filed 03/31/15 Page 9 of 12

*Brown*, 878 F. Supp. 2d at 489.  *Compare Wayt v. Town of Crothersville*, 866 F. Supp. 2d 1008, 1017-18 (S.D. Ind. 2012) (examining municipal ordinances regarding water reconnection fees and finding no property right); *with Lewis v. Schmidt*, No. 10 CV 1819, 2011 WL 43029, at *7 (N.D. Ill. Jan. 4, 2011) (finding a legitimate claim to entitlement to water service where municipal code expressly provided, owners, occupants, or users who have expressed a desire to dispute or discuss their bill in writing with an entitlement to a hearing before their water service can be terminated).

Plaintiffs also claim that they have a constitutionally protected interest in utility service based on the Eleventh Circuit's decision in *DiMassimo v. City of Clearwater*, 805 F.2d 1536 (11th Cir. 1986).  In that case, at the request of the plaintiffs' respective landlords, the city utility disconnected the plaintiffs' gas and water services without notice or an opportunity to protest the interruption of services.  *Id*. at 1537.  There, the court noted that Florida landlord-tenant law specifically required a landlord of a dwelling unit to provide tenants with running water, granted a tenant the right to seek injunctive relief against the landlord, and implicitly required landlords to furnish water to single dwelling units where the failure to do so amounts to constructive eviction.  *Id*. at 1539.  The court reasoned that failing to give tenants proper notice before terminating services deprived the plaintiffs of a protected property interest in their right under state law to bring an action to enjoin their landlords from constructively evicting them by terminating utility services.  *Id*. at 1540.  *See James v. City of St. Petersburg, Fla.*, 33 F.3d 1304, 1307 (11th Cir. 1994) (stating that "[t]he property interest [in *DiMassimo*] said to have entitled the tenants to due process was not the expectation of continued water service as mere users, but the 'right to prevent the landlord from obtaining a constructive eviction by disconnecting the city water services.'").

Plaintiffs argue that *DiMassimo* is applicable here because Arkansas law does not allow landlords to use self-help to evict tenants. *See Gorman v. Ratliff*, 712 S.W.2d 888, 890 (Ark. 1986). In *Gorman*, the Arkansas Supreme Court held that the Arkansas statutes on forcible entry and detainer prohibit self-help eviction. *Id.* at 889-90. The court explained, "No entry by a landlord onto property occupied by another is given by [Act 615 of 1981], except by first resorting to legal process. Accordingly, self-help action is prohibited." *Id.* at 890. The court further stated that Arkansas's forcible entry and detainer statutes "were designed to restore possession to the tenant until the right to possession could be adjudicated . . . ." *Id.* The Arkansas Supreme Court subsequently has interpreted *Gorman* broadly, stating that *Gorman* "outlawed the use of self-help measures to regain property." *Duhon v. State*, 774 S.W.2d 830, 835 (Ark. 1989). Further, considering *Gorman* and *Duhon*, the Attorney General of Arkansas has opined that installing a device that would enable a landlord to cut off utility service to tenants in the event of nonpayment of rent would run afoul of *Gorman*'s prohibition of self-help eviction. *See* Ark. Op. Att'y Gen. No. 2006-223, 2007 WL 201187 (Jan. 23, 2007).

Plaintiffs do not specifically allege constructive eviction in their complaint. In their briefing, plaintiffs state that whether through intent or negligence, River Town's failure to pay the City has the same effect as the actions of the landlords in *DiMassimo*. The Court notes that the Ninth Circuit in *Turpen v. City of Corvallis*, 26 F.3d 978, 979 (9th Cir. 1994), followed *DiMassimo* in a case in which the landlord merely failed to pay the bill. Similar to the Florida law in *DiMassimo*, the court in *Turpen* cited Oregon landlord-tenant statutes providing tenants with a cause action to recover damages and obtain injunctive relief for a landlords' failure to maintain habitable conditions. The court stated that the distinction between a landlord's intentionally terminating services and merely failing to pay the bill was irrelevant to whether the

termination of water service without notice extinguished the tenants' right to seek pre-termination injunctive relief. *Id.*

At this stage of the proceedings, considering Arkansas's prohibition on extra-judicial, self-help eviction and the reasoning of *DiMassimo* and *Turpen*, the Court cannot say that plaintiffs have failed to allege the deprivation of a protected property right to which due process applies. "Once it is decided that procedural due process is applicable, the second step is the determination of what process is due." *Johnson v. Mathews*, 539 F.2d 1111, 1117 (8th Cir. 1976). Here, plaintiffs allege that that the City terminated their utilities without providing them with any notice at all, and the City and Mr. Rimmer do not challenge plaintiffs' allegations as to the second step of the procedural due process inquiry.

The Court finds that plaintiffs have sufficiently alleged a procedural due process claim under the Fourteenth Amendment. Further, the parties make no distinction between plaintiffs' federal due process claim and their state due process claim asserted under article 2, section 8 of the Arkansas Constitution. The Court finds that plaintiffs' state claims are also sufficient to survive defendants' motion to dismiss. *See Davis v. Smith*, 583 S.W.2d 37, 40-41 (Ark. 1979) (in context of parental rights, considering together due process issues under the Fourteenth Amendment to the United States Constitution and Art. 2, § 8 of the Constitution of Arkansas); *Carroll v. Johnson*, 565 S.W.2d 10, 14 (Ark. 1978) ("Our due process clause is not significantly different [than the Due Process Clause of the Fourteenth Amendment to the United States Constitution]."). The Court denies the City and Mr. Rimmer's motion to dismiss pursuant to Rule 12(b)(6).

### IV.   Conclusion

The Court finds that plaintiffs' allegations are sufficient to establish standing.  The Court further finds that plaintiffs have sufficiently alleged the deprivation of a protected property interest.  Accordingly, the Court denies the City and Mr. Rimmer's motion to dismiss (Dkt. No. 4).

SO ORDERED this the 31st day of March, 2015.

_____
Kristine G. Baker
United States District Judge